*227
 
 Ruffin, C. J.
 

 Joseph Peace is justly charged with a reasonable rent of the premises, occupied by himself or his family. There is no ground on which he could have the use of the property gratuitously, more than he could take merchandize from the store without being charged for it. He did< not purchase the property as his own, but the firm bought it, took the conveyances, and made all the outlays on it. If it was decayed or was burned, the loss would have been that of the partnership ; and, as he exclusively enjoyed it, he ought to pay to the partnership a' fair rent. Of course the Court cannot undertake to enquire into the period of his occupation, nor the proper rent to be charged, nor is it supposed the parties expect it, or that the Court should do more than determine the principle. If they cannot agree upon those points, they must be referred to the master.
 

 With respect to the heavier item of interest, the law, we think, is against the defendant. The general rule for interest, on accounts in ordinary dealings si, that it is chargeable only after an account has been rendered, so that the parties can see which is the debtor and what he has to pay, unless it be agreed otherwise, or the course of business shews it to have been otherwise understood. This applies still more forcibly, as between partners, because their accounts cannot be fully made up between them without, in truth, taking all the accounts of the firm ; in other words, without a dissolution: and it is impossible to tell before, what either would be bound to pay or entitled to receive. Therefore, if the parties mean, that interest should be charged on the accounts of the partners, for dealings in the shop and money withdrawn for personal expenses or other things, from year to year, the course is to come to an agreement, to that effect, and then for balances appearing, upon those individual accounts annually or oftener, according to the agreement, charges of interest are made from time to time, or, if omitted, will be allowed in making the final
 
 *228
 
 settlement. If there be no agreement upon the subject, it must be understood, that the parties, especially when they have no separate property, were aware that each must draw from the firm the means of supporting, himself and his family, and that an exact equality could not be expected in those matters ; and therefore, that it was not intended that interest should be charged during the partnership. In
 
 Dexter
 
 v.
 
 Arnold,
 
 3 Mas. Rep. 284, Mr. Justice Story lays it down, that interest is not allowed upon partnership accounts generally, until a balance is struck on a settlement between the partners, unless the parties have otherwise agreed or acted in their partnership concerns. And Chancellor Kent, in
 
 Stoughton
 
 v.
 
 Lynch, 2
 
 John C. C. 209, says, that the time of dissolution is the périod to adjust the balance between the partners, and the party, then found the debtor, becomes so with obligation to pay, and is, therefore, charged with interest on that debt. In that case, the partners had made no settlement, but the master in taking the accounts in a suit to settle the partnership, found the balance at the period of dissolution, and thenceforward allowed the interest thereon; and the Chancellor approved of it, saying that it was the general practice, as wrell as the good sense of the thing, that a rest should be made on the liquidation and adjustment of accounts, at the period of the dissolution of the concern. These positions render it clear, that there can be no charge of interest before the death of, Joseph Peace, and that interest ought to be charged after that event, on the amount found to have been then due from him. It' cannot be allowed before', because it is admitted that there was no agreement for it, nor even a suggestion of it in conversation ; and the accounts had just been kept on in the books, without being examined or even added up, upon the entire confidence of the brothers, in the good faith of each other, that all proper charges were respectively made by each against himself. It is absolutely certain, we think,
 
 *229
 
 that Joseph Peace had no idea that he was to pay interest, else he would have charged it, or mentioned it at least; and it is nearly certain, that the defendant had had as little thought of charging him with it, though he is now from peculiar circumstances, induced to prefer the claim against his administrator. But the benevolence of his view, as to the disposition of what he might gain by the charge, cannot change the law. If he had been dissatisfied with the amount of his brother’s expenditures, he might either have stopped the business, or made an agreement as to interest. Having done neither, and knowing that no interest had been charged at any time during forty-four years, it is presumed that it was not intended to be charged Tfie omission of this charge has a very different effect from the omission merely of the charge of rent, since the latter required an adjustment, as to the proper amount between the parties, while the other would have required but computation. We have said, that interest cannot be allowed before the death of Joseph Peace — which is, because there had been no dissolution before. It is true the buying and selling of goods had been stopped ten years, but nearly all their property remained joint, and all their accounts went through the books of the firm, regularly kept up to his death, which event alone dissolved the concern. But upon the principle held in
 
 Stoughton
 
 v.
 
 Lynch,
 
 the balance then due must be ascertained, and interest computed thereon from that time until the settlement be made.
 

 The pleadings also raise another question, upon the following facts stated in the answer. One John W. Young married a daughter of Joseph Peace, who took charge of their advancement and also of the support of their children, and from time,to time supplied them with necessaries or money to purchase them. For some of those advances he took memorandums or notes from Young; and upon one occasion the defendant, finding a number of them in the store, computed the amount due thereon
 
 *230
 
 and took the bond of Young to the firm therefor. Other memorandums of the same kind were found, upon the death of Joseph Peace, among his private papers.
 
 There
 
 were also on the books other small debts charged to some “ other members of said Joseph’s, family.” The defendant stales his belief, that Joseph Peace did not expect or intend that Young and “ the other members of his family” should pay any part of those debts, and considered himself accountable for them, as he recorded them as advancements or supplies to his family, and would not have thought of the defendant’s contributing to them. In consequence of these views, the defendant, after the death of Joseph, transferred to his debit the debts before charged to Young and “ the other members of his family,” and also charged him with the amount of the due bills of Young, that were found in Joseph Peace’s desk, and the interest thereon. It is submitted to the Court whether that charge or any part of it is proper. The statement is so deficient, as to the period and amounts of the several advances, which form the subject of this part of the controversy, and also as to what other sums Joseph
 
 Peace
 
 laid out for advancements to Mrs. Young, or for the benefit
 
 of the
 
 “other members of the family,” that the Court is not able to speak conclusively on the subject. It would seem from the circumstances, that Joseph Peace generally charged to his own account immediately the sums expended for the maintenance or advancement of the dependent members of his family, that he did not intend to take on himself the debts contracted for those persons by Young himself or the others, and for which he took notes or made charges in account against them. Why charge them instead' of himself, if he meant the debts to be his own ? This reason is particularly strong in respect of the bond of Young, which was taken by the defendant for a number of those demands, whereby all parties made Young, and not Joseph Peace, debtor to the firm thefefor. It is possible that Joseph Peace purposed to take the debt on
 
 *231
 
 himself in the final settlement, especially, if Young was unable to pay, and was known to be at
 
 the time his
 
 debts were contracted. But it does not sufficiently appear, that it was so intended between the parties, or that even he had a distinct intention upon the subject. Nothing seems to have been said upon it at any time; and the presumption is, that the debts were exclusively those of the persons against whom a note was held or a charge made in the books. For the sums, for which Young’s notes were found in Joseph Peace’s private papers, it is natural to suppose he had already charged Jiimself on the books of the firm; otherwise, he would have placed those notes among the papers of the concern, as he had done the others. Upon the whole, therefore, the Court holds that it was improper to charge Joseph Peace with the bond of Young, which the defendant took as before mentioned ; and we incline to the opinion, that no part of Young’s debt was chargeable to Joseph Peace — the same is probably trne, for the same reasons, in respect to the debts of the
 
 “
 
 other members of the family,” but as the facts in relation to those debts, do not sufficiently appear, we are unable to come to any definite decision of the point.
 

 Per Curiam.
 

 Declared accordingly.